UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| RODNEY CLARK, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>SANDRA CARTER, *et al.*,<br><br>Defendants. | Case No. C05-5613FDB<br><br>REPORT AND RECOMMENDATION<br><br>**NOTED FOR:**<br>November 24th, 2006 |

This 42 U.S.C. § 1983 civil rights action has been referred to the undersigned Magistrate Judge pursuant to Title 28 U.S.C. §§ 636(b)(1)(A) and 636(b)(1)(B) and Local Magistrates' Rules MJR 1, MJR 3, and MJR 4.  Before the court are defendants' motion to dismiss converted to a motion for summary judgment,  and plaintiff's motion for summary judgment.

Having reviewed the entire file the court recommends that Plaintiff's motion for summary judgment be **DENIED,** and that defendant's motion for summary judgment on the merits be **GRANTED.**

REPORT AND RECOMMENDATION - 1

## PROCEDURAL HISTORY

Plaintiff filed a motion for Summary Judgment prior to discovery being taken (Dkt # 19 and 20). Defendants filed a motion to dismiss (Dkt # 18). There were then responses and replies including the filing of supplemental exhibits (Dkt. # 22 to 25). The court noted that the exhibits and record were far beyond what is normally allowed at the motion to dismiss stage and converted the defendant's motion to a motion for summary judgment (Dkt. # 26). The court gave the parties the opportunity to file additional briefing (Dkt. # 26). The defendants filed additional briefing (Dkt # 30 and 33).

The court then requested briefing on certain issues and that briefing has been received from both parties (Dkt. # 34, 35, and 37). This matter is now ripe for review.

## FACTS

Plaintiffs, Rodney and Cristy Clark, filed a pro se civil rights lawsuit pursuant to 42 U.S.C. § 1983 naming Sandra Carter, Larry Scroggins and Tanya Cain as Defendants (Docket #7). Mr. Clark is an inmate. Cristy Clark is his wife. In their Complaint, Plaintiffs claim that their First, Fourth, and Fourteenth Amendment Rights were violated when Mr. Clark's sexually explicit outgoing mail to his wife was rejected by prison officials on July 1, 2005 (Dkt. # 7, page 3). Plaintiffs seek monetary damages and injunctive relief (Dkt. # 7, page 4). Only Mr. Clark has signed the pleadings in this case. The fact that Mrs. Clark had not signed pleadings was brought to the court and plaintiffs attention, but Mrs. Clark has not corrected the situation by signing pleadings.

In it's use of the term "sexually explicit" the court is using the definition of sexually explicit found in the Department of Correction's Mail Policy 450.100. (Dkt. # 18, Exhibit 1, Attachment A, pages 5 and 6 sec III § 11 ¶b, subparagraphs 1 through 7). The policy prohibits the sending or receiving of mail that depicts "sexual behaviors including, but not limited to, intercourse/penetration, sodomy, fellatio, cunnilingus, anilingus, or masturbation" (Dkt. # 18, Exhibit 1, Attachment A, pages 5, 6, and 8).

Defendant Carter explains that the policy decision to reject "sexually explicit" mail incoming or outgoing was made at the Department of Corrections headquarters level. She states:

REPORT AND RECOMMENDATION - 2

> In May of 2004, I received a memorandum from Lynne DeLano, Assistant Deputy Secretary, regarding changes to the definition of sexually explicit in DOP 450.100. A true and accurate copy of that memorandum is attached to this declaration as Attachment A. This memo explains the reasons why DOC changed its policy regarding sexually explicit materials going into and out of DOC facilities.
>
> A study was conducted three years prior to the date of the memo to investigate the effects of sexually explicit materials on inmates, volunteers, and staff. Expert psychologists participated in the study and determined that viewing pornographic or sexually explicit material leads to an increase in sexual aggression. That increase in sexual aggression was found to be a threat to the safety and security, for staff, offenders, offender families, and community volunteers.
>
> The experts found that there was an increase in sexual aggression, threatening the safety and security of the institution, regardless of whether the inmate received the materials from mail coming into him or he created the materials and sent them out to someone else. Consequently, DOC policy was changed to prohibit offenders from sending or receiving sexually explicit materials.

(Dkt. # 30, Exhibit 2, ¶ 5 through 7). Plaintiffs have not contradicted defendant Carter's assertions of fact and they are accepted as undisputed.

Mr. Clark received written notification of the Department's refusal to send out his mail (Dkt # 18, Exhibit 2 Attachment A). On July 18th, 2005 he appealed the mail rejection to Superintendent Carter (Dkt. # 18, Exhibit 2, Attachment B). On July 29th, 2006 she denied his appeal (Dkt # 18, Exhibit 2, Attachment C).

It is uncontested that Mr. Clark also filed a grievance regarding the mail rejection and he was told the issue was not grievable because it had its own appeal process. The appeal process outlined in the mail policy itself states that "If the offender and /or sender wishes to seek a review of the Superintendent's decision, the review shall be sought by writing directly to the Office of Correctional Operations, (OCO), Deputy Secretary within 10 calendar days of the decision" (Dkt. # 18, Exhibit 1, Attachment A page 11).

The parties disagree on whether Mr. Clark sought review at the final stage allowed by the mail room policy. The defendants contend Kathryn Bail never received an appeal from Mr. Clark regarding the July 1st, 2005 mail rejection (Dkt. # 18, Exhibit 3, affidavit of Kathryn Bail). Mr. Clark contends he mailed a letter of appeal to the OCO, on July 28th, 2005 (Dkt. # 24, Exhibit A, Attachment 1).

REPORT AND RECOMMENDATION - 3

## STANDARD OF REVIEW

Pursuant to Fed. R. Civ. P. 56 (c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 253 (1986); T. W. Elec. Service Inc. v. Pacific Electrical Contractors Association, 809 F.2d 626, 630 (9th Cir. 1987).

The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. Anderson, 477 U.S. at 254; T.W. Elec. Service Inc., 809 F.2d at 630. The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. Id.

The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in hopes that evidence can be developed at trial to support the claim. T.W. Elec. Service Inc., 809 F.2d at 630.(relying on Anderson, *supra*). Conclusory, nonspecific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." Lujan v. National Wildlife Federation, 497 U.S. 871, 888-89 (1990).

## DISCUSSION

REPORT AND RECOMMENDATION - 4

A. <u>Exhaustion of administrative remedies</u>.

The Prison Litigation Reform Act ("PLRA") requires exhaustion of administrative remedies prior to filing a complaint in federal court. The relevant portion of the act states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Here, plaintiff filed this action while incarcerated and the act applies to him. The United States Supreme Court determined that Congress enacted the provision in order to reduce the quantity and improve the quality of prisoner suits. <u>Porter v. Nussle</u>, 534 U.S. 516 (2002). By mandating exhaustion, Congress enabled corrections officials to address prisoner complaints internally. Where exhaustion was once discretionary, it is now mandatory. "All 'available' remedies must now be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'" <u>Porter v. Nussle</u>, 534 U.S. 516 (2002) (quoting <u>Booth v. Churner</u>, 532 U.S. 731, 739 (2001)). The <u>Porter</u> Court ruled that "§ 1997e(a)'s exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." <u>Porter</u>, 534 U.S. at 520.

Defendants argue Mr. Clark did not exhaust his administrative remedies because he did not appeal the Superintendent's decision regarding his mail rejection to the OCO Deputy Secretary (Dkt # 18, Page 4). Defendants support the motion with the affidavit of Kathryn Bail who indicates she has checked the records of the Department she received and no appeal of the July 1st, 2005 mail rejection (Dkt. # 18, Exhibit 3).

Mr. Clark argues he sent a letter to the proper office and received no answer. He provides a copy of the letter he alleges he sent (Dkt. # 24, Exhibit A, Attachment 1). There is a factual dispute between the parties. If plaintiff made a reasonable attempt to exhaust his administrative remedies and received no answer he may proceed. As there is a genuine issue of material fact the **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES SHOULD BE DENIED.** The court does not address plaintiff's argument that the PLRA exhaustion requirement only applies to the prison grievance

REPORT AND RECOMMENDATION - 5

system and not to other administrative remedies given this ruling. (Dkt. # 24).

B.    The Fourth Amendment.

The Fourth Amendment to the United States Constitution protects the right of the people to be secure in their persons, houses, papers, and effects. The Amendment protects against unreasonable searches and seizures. The Fourth Amendment applies to the states by way of the Fourteenth Amendment. See Mapp v. Ohio, 367 U.S. 643, 655 (1961). Under the Fourth Amendment there must be a warrant for a search. There are many exceptions to the warrant requirement. In order for the Fourth Amendment to apply the expectation to privacy must be one society is willing to recognize.

Inmates do not have a right to privacy in normal mail. Mail may be searched and read unless it is protected by a special privilege such as the client attorney privilege. Here, plaintiff attempts to equate the husband wife privilege with the client attorney privilege. The husband wife privilege prevents one spouse from testifying against another. The court rejects any contention the privilege applies to written correspondence that is subject to search by a third party.

An inmates limited right to privacy must be weighed against legitimate penalogical objectives which may require certain types of searches and seizures. See Turner v. Safley, 482 U.S. 78, 94-99 (1987). Prison officials have the right to open and read normal mail into and out of the facility. Even mail from attorneys to inmates may be searched, as long as it is not read by prison officials. Wolff v. McDonnell, 418 U.S. 539, 575-577 (1974). Prison officials also can inspect mail sent from inmates to their attorney as long as these materials are not read. Rope v. Superior Court of Wash., 779 F.2d 573, 574-75 (9th Cir. 1986). Given this precedent, the court concludes an inmates right to privacy does not prevent opening and reading mail to a spouse. Plaintiff's Fourth Amendment claim is without merit. **DEFENDANTS MOTION FOR SUMMARY JUDGMENT ON THIS ISSUE SHOULD BE GRANTED.**

B.    Fourteenth Amendment Claim.

The Due Process clause of the Fourteenth Amendments provides that no person shall be deprived of life, liberty or property without due process of law. In analyzing a procedural due

REPORT AND RECOMMENDATION - 6

process claim, a court must first determine whether the claimant has been deprived of a liberty or property interest protected by the Constitution.  If there has been a deprivation the court must determine whether the procedures attendant upon that deprivation were constitutionally sufficient. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454 (1989).

At the core of the due process clause is the right to notice and a hearing "at a meaningful time and in a meaningful manner." Armstrong v. Manzo, 380 U.S. 545, 552 (1965).  "Ordinarily, due process of law requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." Memphis Light, Gas & Water Div. v. Craft, 436 U.S. 1, 19 (1978); Hodel v. Virginia Surface Mining & Recl. Ass'n, 452 U.S. 264, 299 (1981); Fuentes v. Shevin, 407 U.S. 67, 81-82 (1972); Boddie v. Connecticut, 401 U.S. 371, 378-79 (1971); Tom Growney Equipment, Inc. v. Shelley Irrigation Dev., Inc., 834 F.2d 833, 835 (9th Cir.1987).  Only in extraordinary circumstances involving " 'the necessity of quick action by the State or the impracticality of providing any [meaningful] pre-deprivation process' " may the government dispense with the requirement of a hearing prior to the deprivation. Logan v. Zimmerman Brush Co., 455 U.S. 422, 436 (1982)(*quoting* Parratt v. Taylor, 451 U.S. 527, 539 (1981)).

Here, plaintiffs have a property interest in a letter written by Mr. Clark.  Prison officials inspected the letter and found it to violate the Department of Corrections outgoing mail policy as the content was sexually explicit.  Notice that the letter would not be sent was given to Mr. Clark the same day the letter was rejected.  The State could not have given notice any quicker.  The mail policy has a built in appeal procedure that gave Mr. Clark an opportunity to be heard and Mr. Clark used that procedure although the process was not completed (Dkt. # 18 Exhibit 1, Attachment A and Exhibits 2, Attachments A, B, C).  There has been no Due Process violation as plaintiff received notice and an opportunity to be heard. **DEFENDANTS MOTION FOR SUMMARY JUDGMENT ON THIS ISSUE SHOULD BE GRANTED.**

  C. First Amendment.

  1. Obscenity.

The letter Mr. Clark attempted to send his wife is in the record (Dkt. # 18-2, pages 33 to 34).

REPORT AND RECOMMENDATION - 7

The substance of this letter is not disputed. Other than a brief introduction and a request for funds in a post script, the letter contains nothing but graphic descriptions of the many ways Mr. Clark intends to have sex with his wife when he is released from incarceration.

Certain types of speech are not protected by the First Amendment. Among the forms of speech unprotected by the First Amendment is obscene speech. R.A.V. v. City of St. Paul, 505. 377, 383 (1992). There is a three part test to determine if speech is obscene. Miller v. California, 413 U.S. 15, 20 (1973).

The first prong of the test is whether an average person applying contemporary standards would find the work, taken as a whole, appeals to the prurient interest. Mr. Clark's letter meets that criteria without any doubt. The letter is simply a description of sex acts (Dkt. # 18-2, pages 33 to 34).

The second prong of the test is whether the "work depicts or describes, in a patently offensive way, sexual conduct." Miller v. California, 413 U.S. at 24. In his letter Mr. Clark uses street slang and vernacular for sexual organs and his graphic description of sexual acts would be offensive to most readers. The letter, while addressed to Mrs. Clark, is subject to being read and searched by persons who did not solicit or wish to view information of this nature. Thus, court believes the material is "patently offensive."

The state has met the burden of showing the letter offensive in part because the message will be viewed by persons other than the intended recipient. Further, Mr. Clark was aware his outgoing mail was subject to being searched and read by prison officials who were, by necessity, subjected to the content of the letter. (Dkt. 18-2, pages 33 to 34).

The final prong is whether the work lacks serious literary, artistic, political, or scientific value. There is no doubt the letter lacks value. Defendants have shown the letter in question to meet the definition of obscene speech.

Plaintiff argues the rejection of his letter amounts to censorship (Dkt. # 20, page 8). His argument will be addressed in the alternative below.

If the District Court concurs that the mail in question was obscene, then a First Amendment

REPORT AND RECOMMENDATION - 8

analysis is not needed and **DEFENDANTS MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED.**

D.      Penalogical Interest.

In the alternative the court addresses the issue of censorship. Plaintiff argues rejection of his letter amounts to unconstitutional censorship (Dkt. # 24).  The cases cited by plaintiff deal with situations where the mail in question was being rejected because it was critical of government officials.  Procunier v. Martinez, 416 U.S. 396 (1974).  The court in Maritnez, stated "prison officials may not censor inmate correspondence simply to eliminate unflattering or unwelcome opinions or factually inaccurate statements." Martinez, 416 U.S. at 414. This case does not involve that type of prohibited censorship.

The Martinez court set forth the standard used for determining if a regulation censoring outgoing mail is constitutional.  A regulation on outgoing mail is valid if it furthers a substantial government interest and is "no greater than is necessary or essential to the protection of the particular governmental interest involved."  Martinez, 416 U.S. at 413.

The Supreme Court has clarified what is meant by the language in the standard. Thornburgh v Abbott, 490 U.S. 401 (1989).  In Thornburgh the court dealt with incoming sexually explicit mail. The court analyzed the Martinez standard and noted that many courts had equated the standard with a strict scrutiny or heightened scrutiny standard that was not appropriate when considering regulations "centrally concerned with maintenance of order and security within prisons." Thornburgh v Abbott, 490 U.S. at 409.

The court concluded:

> We do not believe that *Martinez* should, or need, be read as subjecting the decisions of prison officials to a strict "least restrictive means" test.  As noted, *Martinez* required no more than that a challenged regulation be "generally necessary" to a legitimate governmental interest.

Thornburgh v Abbott, 490 U.S. at 411.

Here, prison officials argue the regulation was implemented at the headquarters level to furthers goals of safety and security.  Defendants state:

REPORT AND RECOMMENDATION - 9

> A study was conducted three years prior to the date of the memo to investigate the effects of sexually explicit materials on inmates, volunteers, and staff. Expert psychologists participated in the study and determined that viewing pornographic or sexually explicit material leads to an increase in sexual aggression. That increase in sexual aggression was found to be a threat to the safety and security, for staff, offenders, offender families, and community volunteers.
>
> The experts found that there was an increase in sexual aggression, threatening the safety and security of the institution, regardless of wether the inmate received the materials from mail coming into him or he created the materials and sent them out to someone else.  Consequently, DOC policy was changed to prohibit offenders from sending or receiving sexually explicit materials.

(Dkt. # 30, Exhibit 2, ¶ 5 through 7).  Plaintiff has not contradicted these assertions of fact.

The safety and security of prisons is a central goal for prison authorities. Thus the regulation is designed to further a substantial government interest. Whether the regulation is no greater than is necessary or essential to the protection of the particular governmental interest involved is the final question.

Defendants contend the creation and sending out of the material results in the same problem of increased sexual aggression (Dkt. # 30, Exhibit 2, ¶ 5 through 7).  Plaintiff does not address this argument and has not come forward with any evidence to show a genuine issue of material fact exists as to this assertion of fact.

The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial, e.g. the preponderance of the evidence in most civil cases. <u>Anderson</u>, 477 U.S. at 254; <u>T.W. Elec. Service Inc.</u>, 809 F.2d at 630.  The court must resolve any factual dispute or controversy in favor of the nonmoving party only when the facts specifically attested by the party contradicts facts specifically attested by the moving party. <u>Id</u>.  **DEFENDANTS MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED.**  Given this ruling the issues of injunctive relief and qualified immunity are not addressed.  A proposed order accompanies this Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. <u>Thomas v Arn</u>, 474 U.S. 140 (1985).  Accommodating the time limit imposed by Rule 72(b),

REPORT AND RECOMMENDATION - 10

the clerk is directed to set the matter for consideration on **November 24th , 2006** as noted in the caption.

DATED this 31ST day of October, 2006.

    **/s/ J. Kelley Arnold**
J. Kelley Arnold
United States Magistrate Judge

REPORT AND RECOMMENDATION - 11